# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

Stephanie M.,

      Plaintiff,

    v.

Commissioner of Social Security,

      Defendant.

**DECISION and ORDER**

1:21-cv-1210-MJP

## APPEARANCES

**For Plaintiffs:**

**Rebecca M. Kujawa, Esq.**
Law Offices of Kenneth Hiller, PLLC
6000 N Bailey Ave, Ste 1A
Amherst, NY 142266

**For Defendants:**

**Scott Elliott, Esq.**
Office of the General Counsel
Social Security Administration
6401 Security Blvd
Baltimore, MD 21235

## INTRODUCTION

**Pedersen, M.J.** Stephanie M. ("Plaintiff") commenced this case for review of an unfavorable decision by the Commissioner of Social Security ("Commissioner") per 42 U.S.C. § 405(g). The parties have consented to magistrate judge jurisdiction. (Consent to Proceed before Magistrate Judge Mark W. Pedersen, Oct. 5, 2023, ECF No. 10.) both have filed motions for judgment on the pleadings. And because the Court subpoenaed treatment records from Plaintiff's therapist, the Court afforded both parties the opportunity to brief the Court on the significance of those records. For the

reasons stated below, I grant Plaintiff's motion and deny the Commissioner's motion for judgment on the pleadings.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); see also *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997). The substantial evidence standard "is . . . a very deferential standard of review---even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). Section 405(g) limits the scope of the Court's review to two

inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green–Younger v. Barnhart*, 335 F.3d 99, 105–06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the A.L.J. must employ a five–step sequential analysis described in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5)     if not, whether the claimant retains the [RFC] to perform any other work
that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)–(v) & 416.920(a)(4)(i)–(v); *see also Berry v. Schweiker*,
675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps
one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show
there is other gainful work in the national economy [which] the claimant could per-
form.'" *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v.
Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## ANALYSIS

The Court assumes the parties' familiarity with the procedural history and as-
serted facts as outlined in their briefs and the Record ("R."). Following a hearing and
review of the medical and other records, the Administrative Law Judge ("ALJ") de-
termined that:

> Plaintiff has the residual functional capacity ("RFC") to perform the full
> rand of work at all exertional levels but with the following non-exer-
> tional limitations: she is limited do the performance of unskilled work
> tasks that require her to understand, remember and carry out simple
> instructions and perform non-complex work tasks. Nevertheless, she
> can (a) understand, remember and carry out instructions, (b) respond
> appropriately to supervision, co-workers and work pressures in a work
> setting, (c) deal with changes in a routine work setting and (d) use judg-
> ment.

(R. 15.) Plaintiff raised the following issues:

> 1. The ALJ failed to develop the full mental health record with Plaintiff's
> treatment notes.

> 2. The ALJ failed to conduct a detailed assessment of mental health lim-
> itations when formulating Plaintiff's residual functional capacity.

3. The ALJ's decision is not supported by substantial evidence, because he relied on divergent medical opinions.

4. Despite finding Dr. Deneen's opinion to be persuasive, the ALJ failed to account for her opinion that Plaintiff is moderately limited in her ability to regulation emotions, control behavior, and maintain well-being.

5. The ALJ improperly hyper-focused on Plaintiff's activities of daily living to discredit Plaintiff's severe mental health impairments and limitations.

(Pl.'s Mem. of Law at 1, ECF No. 5-1.) The Commissioner argues that the ALJ's decision is supported by substantial evidence and free of legal error.

### *Plaintiff's Mental Health Record*

Plaintiff asserted that "[n]early the entire longitudinal mental health treatment record is missing from this transcript." (Pl.'s Mem. of Law at 8.) The notes of Pamela Hughes, PhD, LCSW, Counseling Psychologist and Licensed Clinical Social Worker are missing from the Record. The Court subpoenaed those records, which it received in early March 2024. Those records consist of 198 pages, most of which are Mental Health Progress notes from April 26, 2018, until February 22, 2024. In the 198 pages are four pages Labeled Diagnosis and Treatment Plan. Each of those is dated February 27, 2024, but at four different times (7:51 p.m., 7:24 p.m., 7:14 p.m., and 7:39 p.m.). Each recites the same diagnosis: "F43.10 – Post-traumatic stress disorder, unspecified." Each plan recites "Presenting Problem," "Behavioral Definitions," "First Goal," and "Objective 1." One plan (7:24 p.m.) lists Objective 1 and Objective 2, as well as a Second Goal and Objective 1 under that goal. Another plan, (7:14 p.m.), lists four objectives under the first goal, ("[e]liminate or reduce the negative impact

trauma related symptoms have on social, occupational, and family functioning"), as well as a second goal.

The Record contains a letter from Dr. Hughes dated March 30, 2021, in which she provided the following summary:

> [Plaintiff] was initially evaluated on 4/26/18 and carried a preliminary diagnosis of Postpartum Depression and acute grief/loss of her infant son. She has been seen in my private practice weekly from this initial evaluation to [the] present time and has been subsequently diagnosed more definitively with Major Depression, Post Traumatic Stress Disorder, and Obsessive-Compulsive Disorder. Using Cognitive-Behavioral Treatment, [Plaintiff] has made slow progress over the course of the last 3 years. She often becomes emotionally paralyzed with mixed anxiety/depression and has difficulty with concentration, emotional regulation/lability, requiring implementation of immediate relaxation techniques. She has voluntarily committed to continuing therapy until she is better able to manage her symptoms.

(R. 600.) Now that the Court is in possession of Dr. Hughes' progress notes and treatment plans, the Court finds the ALJ's assessment that "progress notes do not reflect further intervention," (R. 19), is not entirely accurate. Dr. Hughes' notes indicate that Plaintiff continued treatment with her well beyond the date of the hearing or ALJ's decision.

Plaintiff referred to her ongoing treatment with Dr. Hughes. She testified at the hearing, "I'm seeing my doctor, Pamela Hughes, every Monday at 3:00. We have a standing appointment." (R. 35.) She testified that if she has a panic attack while driving, "I'll pull over and try to do some of the techniques that Dr. Hughes teaches me, like tapping, you know, breathing techniques." (R. 37.) And she testified in response to a question from the ALJ: "I just have the one-hour therapy session with Pamela Hughes every week at 3:00 on Monday." (R. 40.) Plaintiff was represented by

Frederick Peterson, Esq., a member of the law offices of Kenneth Hiller. (R. 31.) The

ALJ noted that Mr. Peterson "stipulated that the record was complete at the hearing."

(R. 10.) What Mr. Peterson stated was:

> ALJ: Okay. Do we have complete medical record today?
>
> ATTY: With regard to the medical record, Your Honor, it looks I know I sound like a broken record, but we have one record that it appears we received yesterday. And I just checked the E-sure (ph.) Disability System. I don't see it exhibited, so I do believe it will be available for you to view soon because at least, as I checked our in-house records, these were sent in to the E-sure Disability System, and we have a confirmation received from that.

(R. 31–32.)

The late Honorable Michael A. Telesca of this Court wrote in a decision involv-

ing a similar issue:

> The regulations state that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945[1] (citing 20 C.F.R. §§ 416.912(d) through (e)). Although an ALJ has no duty to further develop the record "where there are no obvious gaps" and where the ALJ possesses a "complete medical history," see *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999), the record in this case indicated a significant gap in plaintiff's medical history. … Given the clear indications in the record that important treatment notes were missing, the ALJ failed in his duty to further develop the record in order to obtain a full longitudinal picture of plaintiff's mental health treatment.

---

[1] "[W]e are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources." 20 C.F.R. § 416.945.

*Johnson v. Colvin*, No. 1:14-CV-00353 (MAT), 2016 WL 624921, at *3 (W.D.N.Y. Feb. 17, 2016). This duty to develop the record exists even if a plaintiff is represented by counsel. *Umansky v Apfel*, 7 Fed. Appx. 124, 127 (2d Cir. 2001) (summary order).

Dr. Hughes was, and possibly still is, Plaintiff's treating psychologist, who has continued to treat her throughout this litigation. In view of the ALJ's conclusion, that "progress notes do not reflect further intervention," and that "[p]rogress notes do not reflect a need for further intervention," I am unable to assess whether the lack of notes showing continuing treatment with her psychologist affected the ALJ's determination that Plaintiff was capable of performing

> a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to the performance of unskilled work tasks that require her to understand, remember and carry out simple instructions and perform non-complex work tasks. Nevertheless, she can (a) understand, remember and carry out instructions, (b) respond appropriately to supervision, co-workers and work pressures in a work setting, (c) deal with changes in a routine work setting and (d) use judgment.

(R. 15.) Therefore, I reverse the decision of the Commissioner of Social Security and remand this matter pursuant to the fourth sentence of 42 U.S.C. § 405(g) to address the issue of Dr. Hughes' records and assess whether those records require the Commissioner to change the ALJ's determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED to the extent that this matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings is DENIED.

Finally, should the Commissioner wish to brief the issue, the Court will accept briefing about whether awarding fees in this case would be inappropriate where the same law office represented Plaintiff at the underlying hearing, yet did not obtain records from Dr. Hughes. *See Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Bryant v. Apfel*, 37 F. Supp. 2d 210, 213 (E.D.N.Y. 1999)) (noting, approvingly, that the court in *Bryant* denied a fee application because the prevailing plaintiff's attorney failed "to seek or produce critical medical records from the period of plaintiff's claimed disability" which "made it impossible to determine whether plaintiff was, in fact, entitled to disability benefits"). If the Commissioner intends to brief the issue, the Commissioner is directed to submit a letter indicating as much on the docket by no later than April 12, 2024, at which time the Court will set a briefing schedule. The Court will hold in abeyance any fee application until after that date.

**IT IS SO ORDERED.**

Dated:      March 26, 2024
            Rochester, NY

MARK W. PEDERSEN
United States Magistrate Judge